CV-398-BZ

ADR ECF

✎ JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| MICHAEL WEINER, on behalf of himself and all others similarly situated | WALMART.COM USA LLC, WAL-MART STORES, INC., and NETFLIX, INC. |

| **(b)** County of Residence of First Listed Plaintiff  Philadelphia County, PA<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
|---|---|
| **(c)**  Attorney's (Firm Name, Address, and Telephone Number)<br><br>Jeff D. Friedman<br>Hagens Berman Sobol Shapiro LLP<br>715 Hearst Avenue, Suite 202<br>Berkeley, CA; (510) 725-3000 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury— Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☒ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus – Alien Detainee<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  another district (specify)

Transferred from

☐ 6  Multidistrict Litigation

Appeal to District Judge from Magistrate Judgment

☐ 7

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. sections 1 and 2

Brief description of cause:
Violations of sections 1 and 2 of Sherman Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

09-cv-00002 PJH

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND        ☐ SAN JOSE

DATE  1/28/07

SIGNATURE OF ATTORNEY OF RECORD

ORIGINAL



E-filing

1   JEFF D. FRIEDMAN (173886)
    HAGENS BERMAN SOBOL SHAPIRO LLP
2   715 Hearst Avenue, Suite 202
    Berkeley, CA 94710
3   Telephone: (510) 725-3000
    Facsimile: (510) 725-3001
4   jefff@hbsslaw.com

5   Anthony J. Bolognese
    Joshua H. Grabar
6   Bolognese & Associates, LLC
    Two Penn Center
7   1500 JFK Boulevard, Suite 320
    Philadelphia, PA 19102
8   Telephone: (215) 814-6750
    Facsimile: (215) 814-6764
9   abolognese@bolognese-law.com
    jgrabar@bolognese-law.com

10

    Attorneys for Plaintiff and the Proposed Class

11

**FILED**

**JAN 2 8 2009**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

12          **UNITED STATES DISTRICT COURT** **C09-00398**

13           **NORTHERN DISTRICT OF CALIFORNIA**   **BZ**

14   MICHAEL WEINER, on behalf of himself and  )    Case No.
    all others similarly situated,           )
15                              )    CLASS ACTION COMPLAINT
                   Plaintiff,  )
16                              )
           v.                      )    DEMAND FOR JURY TRIAL
17                              )
    WALMART.COM USA LLC, WAL-MART    )
18   STORES, INC., and NETFLIX, INC.,     )
                             )
19                  Defendants.  )
20                              )

21

22

23

24

25

26

27

28

1    Plaintiff Michael Weiner, by his designated attorneys, individually and on behalf of all

2   others similarly situated, for his Class Action Complaint, allege as follows based upon personal

3   knowledge, the investigation of his counsel, information and belief and publicly available

4   information:

## I. NATURE OF CLAIMS

6    1.    This antitrust class action arises out of a conspiracy among Netflix and Wal-Mart

7   Stores by and through its wholly-owned subsidiary Walmart.com, to divide the markets for the

8   sales and online rentals of DVDs in the United States in order to avoid competition, monopolize

9   and illegally restrain trade in at least the Online DVD Rental Market (defined *infra*).

10    2.    The Online DVD Rental Market was comprised of three principal competitors:

11   Netflix, Walmart.com and Blockbuster.com. These three competitors were in the midst of an

12   ongoing price war when the Chief Executive Officers of Netflix and Walmart.com met for dinner

13   to discuss working together in the Online DVD Rental Market in January 2005.

14    3.    Netflix and Walmart.com reached an agreement, select terms of which were

15   announced on May 19, 2005 ("Market Division Agreement"). The agreement called for

16   Walmart.com to discontinue its online DVD rental service and direct its existing DVD rental

17   customers to become Netflix customers. In return, Netflix agreed it would not sell new DVDs, but

18   instead promote the new DVD sales of Wal-Mart Stores and Walmart.com. Thus, Netflix, Wal-

19   Mart Stores and Walmart.com would not compete with one another in the Online DVD Rental

20   Market or new DVD sales market in the United States after May 19, 2005.

## II. JURISDICTION AND VENUE

22    4.    Plaintiff brings this action seeking injunctive relief, treble damages, and the costs of

23   this litigation, including reasonable attorneys' fees, for injuries sustained by Plaintiff and members

24   of the Class as a result of Defendants' violation of sections 1 and 2 of the Sherman Act, 15 U.S.C.

25   §§ 1 and 2, as alleged in this complaint.

26    5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a)

27   and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

28

CLASS ACTION COMPLAINT                                          - 2 -

6.      Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b) and (c) because during the Class Period at least one of the Defendants resided, transacted business, or had agents in this district; and because a substantial portion of the affected interstate trade and commerce described herein has been carried out in this district.

## III.   PARTIES

7.      Plaintiff Michael Weiner is an individual consumer who resides in Philadelphia, Pennsylvania.  During the Class Period, Plaintiff Weiner paid Netflix directly for online DVD rentals.

8.      Defendant Netflix, Inc. ("Netflix") is a Delaware corporation headquartered at 100 Winchester Circle, Los Gatos, California, 95032.  Netflix rents DVDs directly to consumers nationwide through its website, www.netflix.com, by charging monthly subscription fees and offers various subscription plans.  Since starting its online DVD rental business in 1999, Netflix's total subscribers have grown at a compound annual rate of 70% reaching about 10 million in 2007.  Its annual revenues from engaging in interstate commerce exceeded $1.2 Billion in 2007, which has more than doubled since 2004.  Netflix has possessed a market share of at least 75% of the Online DVD Rental Market in the United States, as defined herein, at all times during the Class Period.  Netflix is publicly traded on the NASDAQ under the symbol NFLX.

9.      Defendant Wal-Mart Stores, Inc. ("Wal-Mart Stores") is a Delaware corporation headquartered at 702 S.W. 8th Street, Bentonville, Arkansas, 72716.  Wal-Mart Stores is the largest retailer in the United States with revenues of approximately $400 Billion annually.  Wal-Mart Stores is publicly traded on the New York Stock Exchange under the symbol WMT.  Through its retail stores and its website, www.walmart.com, Wal-Mart Stores sells DVDs directly to consumers nationwide.  Wal-Mart Stores sells far more DVDs than any other retailer in the United States, accounting for about 40% of all new DVDs sold to consumers domestically.  Prior to the Market Division Agreement as specified herein, Walmart.com, a wholly-owned subsidiary of Wal-Mart Stores, was a major competitor of Netflix in the Online DVD Rental Market through the "Walmart DVD Rentals" service, which was available on www.walmart.com.

CLASS ACTION COMPLAINT                        - 3 -

010096-11 283632 V1

1        10.    Defendant Walmart.com USA LLC ("Walmart.com" collectively with Netflix and Wal-Mart Stores "Defendants") is a wholly-owned subsidiary of Wal-Mart Stores. Walmart.com is a Delaware company with its headquarters at 7000 Marina Boulevard, Brisbane, California, 94005. It is the online component of Defendant Wal-Mart Stores. Prior to the conspiracy alleged herein, Walmart.com competed with Netflix in the Online DVD Rental Market through the "Walmart DVD Rentals" service. While its financials are not publicly reported by Wal-Mart Stores, Walmart.com is ranked as the 14th largest online retailer in the United States. Through the website, www.walmart.com, Walmart.com sold and continues to sell DVDs directly to consumers nationwide. Consumers who purchase DVDs via www.walmart.com may have them either mailed or otherwise delivered to them directly, or they may be picked-up at a Wal-Mart Stores retail location via Walmart.com's and Wal-Mart Stores' "Site to Store" program.

11.    Walmart.com and Wal-Mart Stores are fully integrated, operate as a single commercial enterprise, and hold themselves out to the public as one entity. Walmart.com is an internet sales channel for Wal-Mart Stores; it is not operated as an independent business entity. Wal-Mart Stores is the registrant of the www.walmart.com domain name that is used to sell products and services by Walmart.com. Likewise, Wal-Mart Stores is the registrant of www.walmartdvdrentals.com. Wal-Mart Stores' Chief Marketing Officer John Fleming has explained the relationship between Wal-Mart Stores and Walmart.com as follows: "Wal-Mart Stores set up Walmart.com as a separate company with some outside investors, but within six months Wal-Mart Stores bought back the outside interest and Walmart.com; Walmart.com now serves as a 'marketing channel' for Wal-Mart Stores."

12.    Any reference in this complaint made to an act, deed or transaction of any corporation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business affairs.

CLASS ACTION COMPLAINT        - 4 -

010096-11 283632 V1

## IV.   CLASS ACTION ALLEGATIONS

13.   Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil

Procedure, on their own behalf and on behalf of all others similarly situated. The "Class" is

defined as:

> Any person in the United States that paid a subscription fee to Netflix to
> rent DVDs at any time from at least May 19, 2005 to the present ("Class
> Period"). The Class specifically excludes: Defendants; their officers,
> directors or employees; their subsidiaries, affiliates or any other entity over
> which they have a controlling interest; any co-conspirators; and any
> affiliate, legal representative, heir or assign of any Defendant. Also
> excluded are: any federal, state or local governmental entities; any judicial
> officer presiding over this action and the members of his/her immediate
> family and judicial staff; and any juror assigned to this action.

14.   The members of the Class are so numerous and geographically dispersed across the

country that joinder of all members of the Class would be impracticable. Due to the nature of the

claims asserted here, Plaintiff believes that members of the Class are located throughout the United

States. The exact number of Class members is unknown by Plaintiff at this time, but Plaintiff

believes that the Class is in the thousands and their identities can only be discovered through

inspection of Defendants' and their co-conspirators' records, which are or should be readily

available.

15.   Plaintiff is a member of the Class. Plaintiff's claims are typical of the members of

the Class because Plaintiff and all members of the Class were damaged by the same wrongful

conduct of Defendants as alleged herein. Plaintiff and the Class paid a subscription fee to Netflix

directly, which was artificially inflated and maintained at anti-competitive prices established by the

actions of Defendants and their unnamed co-conspirators in connection with the wrongful conduct

alleged herein.

16.   Plaintiff will fairly and adequately protect the interests of the Class. The interests of

Plaintiff are coincident with and not antagonistic to those of the Class. In addition, Plaintiff is

represented by counsel who is experienced and competent in the prosecution of complex class

action antitrust litigation.

17.   Questions of law and fact common to the members of the Class predominate over

questions that may affect only individual members, if any, in that Defendants have acted on

CLASS ACTION COMPLAINT                    - 5 -

010096-11 283632 V1

1    grounds generally applicable to the entire Class.  Among the questions of law and fact common to

2    the Class are:

3            a.    Whether Defendants engaged in a contract, combination or conspiracy to
             allocate markets;

4            b.    Whether Defendants unreasonably restrained trade in the Online DVD

5                 Rental Market;

6            c.    Whether Defendants had the specific intent for Netflix to monopolize the
             Online DVD Rental Market;

7            d.    The nature and character of the acts performed by Defendants in the

8                 furtherance of the alleged contract, combination or conspiracy;

9            e.    Whether the alleged contract, combination and conspiracy violated section 1
             of the Sherman Act;

10

11           f.     Whether the alleged contract, combination and conspiracy violated section 2
             of the Sherman Act;

12           g.    Whether Defendants have acted or refused to act on grounds generally
             applicable to the Class;

13

14           h.    Whether Defendants' conduct caused Netflix subscription fees to be higher
             than they otherwise would have been and thereby caused injury to the
             Plaintiff and other members of the Class; and

15

16           i.     The appropriate measure of damages sustained by Plaintiff and other
             members of the Class.

17       18.    Class action treatment is superior to the alternatives, if any, for the fair and efficient

18   adjudication of the controversy alleged herein.  Such treatment will permit a large number of

19   similarly situated persons to prosecute their common claims in a single forum simultaneously,

20   efficiently and without the unnecessary duplication of effort and expense that numerous individual

21   actions would engender.  Class treatment will also permit the adjudication of relatively small

22   claims by certain class members who could not afford to individually litigate an antitrust claim

23   against large corporate defendants.

24       19.    The Class is readily definable and is one for which records likely exist in the files of

25   Defendants and their co-conspirators.

26       20.    Plaintiff is not aware of any difficulties that are likely to be encountered in the

27   management of this action that would preclude its maintenance as a class action.

28

CLASS ACTION COMPLAINT           - 6 -

1

## V. INTERSTATE TRADE AND COMMERCE

2   21. The trade and commerce relevant to this action are the sales and rentals of DVDs in
3   the United States.

4   22. During the Class Period, Plaintiff and members of the Class throughout the United
5   States purchased and/or rented DVDs directly from Defendants.

6   23. Defendants' conduct has taken place within the flow of, and substantially affected
7   the interstate commerce of, the United States. Specifically, during the Class Period, Defendants
8   have sold and/or rented DVDs throughout the United States, involving hundreds of millions or
9   billions of dollars in interstate commerce, and used the instrumentalities of interstate commerce,
10  including interstate wires and the U.S. mail, to sell and/or to rent DVDs throughout the United
11  States.

12

## VI. THE ONLINE DVD RENTAL MARKET

13  24. "DVD", as defined herein, refers to a Digital Video Disc or Blu-ray Disc containing
14  commercially recorded entertainment programs for personal viewing. DVDs are the primary
15  medium by which movies and other recorded entertainment are distributed in the United States.
16  Revenues on DVDs far exceed those generated from box office receipts. In addition, DVDs have
17  become a particularly lucrative means for the distribution of previously aired television programs,
18  surpassing even television syndication rights as a revenue stream in many instances. As defined
19  herein, "DVD" does not refer to blank Digital Video Discs, which are used to store or record data.

20  25. While Defendants' market allocation is per se illegal and requires no market
21  definition, for any claims that may require a market definition the relevant market is the market for
22  the rental of DVDs online by subscription for delivery by mail ("Online DVD Rental Market").

23  26. In the Online DVD Rental Market, consumers pay a monthly subscription fee to an
24  online service provider such as Netflix, Blockbuster Online or (prior to May 19, 2005) Walmart
25  DVD Rentals, in order to rent DVDs. There are no late fees or due dates, but within any given
26  plan, the consumer pays the subscription fee regardless of how many DVDs he or she rents per
27  month. Thus, even a consumer who does not rent a DVD for months still is charged the
28  subscription fee; Netflix CEO Reed Hastings calls this the "gym membership effect."

CLASS ACTION COMPLAINT                    - 7 -

1    27.    To rent DVDs, consumers go to the provider's website and list the DVDs they wish

2  to rent in the order of preference in an online rental "queue". Online DVD rental providers have

3  expansive arrays of DVDs for consumers to choose from. The library of titles available from

4  online service providers has grown over time, now ranging near 100,000 DVDs, often twenty to

5  one-hundred times the selection of titles stocked (not to mention available) at any single video

6  rental store.

7    28.    When a DVD is available, it is sent via U.S. mail to the consumer's home.

8  Consumers return the DVD to the provider via U.S. mail in a prepaid envelope and then receive the

9  next DVD in their queue.

10    29.    The Online DVD Rental Market is distinct from traditional in-store DVD rental

11  market and the two services are not reasonably interchangeable. In traditional in-store DVD rental,

12  consumers must drive to the store, hope the DVD they want is in stock, pay for the DVD on a per-

13  DVD basis, and return the DVD within the allocated time frame or incur late fees. During the

14  Class Period as alleged herein, these late fees have accounted for as much as 20% of the revenues

15  in the traditional in-store DVD rental market; in contrast, there are no late fees or due dates in the

16  Online DVD Rental Market.

17    30.    Other factors differentiating the Online DVD Rental Market from other forms of

18  DVD rental, such as in-store, kiosk or video downloading, include:

19    a.    Pricing. In the Online DVD Rental Market, consumers generally pay a
             monthly subscription, which is independent from the number of DVDs the
20           consumers actually rents in a month. In contrast, with other forms of DVD
             rentals, the consumer usually pays for each individual DVD rental.
21           Consequently, changes in the price of online rentals do not closely track
             changes in the price of in-store or other forms of rental. Furthermore, the
22           pricing of online rentals is generally nationwide in scope and is not affected
             by local in-store prices and competition. As a result, the pricing of online
23           rentals would generally be the same to a consumer, regardless of whether the
             nearest rental store is two minutes or two hours away.
24
      b.     Online DVD Rental Offers Additional Services. Online DVD rental
25           providers generally offer additional services, such as movie reviews,
             customer-specific recommendations based on viewing and preference
26           history, and other metrics of popularity.

27    c.    Online DVD Rental is Functionally Unique. Online rentals fundamentally
             differ from in-store rentals in that (1) they do not require travel to a store, (2)
28           are available to anyone with a postal address, regardless of proximity to a

CLASS ACTION COMPLAINT                          - 8 -

010096-11 283632 V1

store, (3) are primarily subscription-based services, and (4) provide a much wider selection of titles than can a traditional rental store. Online DVD rental may be preferred to kiosk rental or downloading for a number of reasons, including relative selection and convenience for consumers, pricing, as well as, from the supply perspective, licensing considerations and technological limitations.

    d.    <u>Market Recognition</u>. The online rental market is recognized as a distinct market by the public and the industry, including by Defendants. For instance, recently, a Netflix executive told the Wall Street Journal that other types of rental services, such as kiosk and in-store rentals, do not present a direct competitive threat to Netflix. That same executive acknowledged that while video downloads may be a competitive force in the future, DVD will be the dominant medium for years to come, making the entry of this technology not timely enough to be considered a competitive force in the Online DVD Rental Market. Netflix CEO Reed Hastings has observed that the competitive threat of internet downloading to online DVD rental during the Class Period is like that of hydrogen powered cars to gasoline powered cars – inconsequential for many years to come. He has further explained that DVDs will be the dominant medium for movies for perhaps as long as the gasoline engine.

    31.    The Online DVD Rental Market is also distinct from the market for DVD sales.

The pricing of DVDs for retail sale and online DVD rentals is very different. Factors

differentiating the Online DVD Rental Market from the new DVD sales market include:

    a.    <u>Pricing</u>. As discussed above, consumers who subscribe to online DVD rental services generally pay a monthly subscription fee. This fee does not vary based on the whether the consumer is renting popular or obscure DVDs. In contrast, the price of DVDs for sale is heavily based on how popular the DVD is, including whether it is a new release or how successful the title originally was at the box office or on television.

    b.    <u>Market Recognition</u>. The industry and the public perceive the Online DVD Rental Market as a separate and distinct market from the new DVD sales market.

    c.    <u>Different Purposes</u>. The factors motivating a consumer to buy a DVD are different from those that lead a consumer to rent a DVD. Consumers generally rent DVDs when they intend to view the DVD once; consumers buy a DVD when they intend to watch it multiple times. DVD rentals are also of no use to consumers that want to give a DVD as a gift or wish to collect DVDs.

    d.    <u>Distinguishing Characteristics</u>. DVDs sold at retail have other distinguishing characteristics, such as packaging and special features not available with rentals. Online rentals are sent in plain envelopes that contain little information other than the title of the DVD. Moreover, whether a DVD is new or used is not an issue in rental, but it is a significant factor in sales. Used DVDs are sold at a significant discount to their new counterparts, due to the fact that they are relatively less desirable to consumers.

          - 9 -

1    32.    Because the Online DVD Rental Market is distinct from the markets for other forms

2  of rental or sales, there is little cross-elasticity of demand between these products and therefore

3  significant non-transitory increases in price do not cause consumers to switch from one market to

4  another.

5    33.    The Geographic Market for the Online DVD Rental Market is the United States.

6  The practical reality is that, among other things, shipping costs and trans-global differences in

7  DVD data encoding make it neither practical nor feasible for entities located in other countries to

8  rent DVDs to U.S. consumers.

9    34.    Netflix dominated the Online DVD Rental Market at all times relevant to this

10  complaint. Netflix's approximate market share of the Online DVD Rental Market at the end of

11  2004 was 78% with Blockbuster Online and Walmart.com controlling nearly the entire 22% of

12  remaining market share. Netflix has had, maintained and extended its monopoly power in the

13  Online DVD Rental Market through the unlawful agreements described herein. It has the power to

14  control prices and has excluded competition in this market.

15    35.    Since the implementation of the Market Division Agreement, discussed in detail

16  *infra,* the Online DVD Rental Market is a duopoly comprised of: Netflix and Blockbuster Online.

17  Netflix controls over 80% of the Online DVD Rental Market; and Blockbuster Online possesses

18  nearly all of the remaining market share. A few minor firms have shares of less than 1-2% of the

19  market. During fiscal years 2005-2007 combined, Netflix earned nearly $4 Billion in revenues and

20  $1.3 Billion in gross profit from renting DVDs to consumers – a margin of more than 33%.

21    36.    There have been no significant market entrants in the more than three years since

22  the announcement of the Market Division Agreement, which increased those barriers. Online

23  DVD rental is highly capital intensive. A firm must operate on a large scale to be successful. It

24  requires the possession of a significant number of distribution centers strategically located

25  throughout the United States to ensure timely delivery. It also requires stocking an extensive

26  inventory of DVDs to maintain the selection of titles that consumers demand. As Netflix CEO

27  Reed Hastings has observed, "When you think about the barriers to entry to this business, it is

28

CLASS ACTION COMPLAINT                          - 10 -

1    subtle because it appears easy. A kid can open a website. But the barriers to profitability are very
2    large."

3        37.    Wal-Mart Stores and its wholly-owned subsidiary Walmart.com dominate the new
4    DVD sales market. Together they hold an industry-leading 40% of the domestic DVD sales
5    market. During fiscal years 2005-2008 combined, they earned revenues in excess of $25 Billion by
6    selling DVDs to consumers. Both Wal-Mart Stores and Walmart.com benefit from the Market
7    Division Agreement.

8                        **VII.   ANTICOMPETITIVE CONDUCT**

9        38.    Competition in the Online DVD Rental Market was heating up in 2004 - 2005. The
10   market was composed of three major competitors – Netflix, Blockbuster Online and Walmart DVD
11   Rentals. With increasing competition from new competitor Blockbuster Online, Netflix stock
12   prices dropped precipitously.

13       39.    In mid-2004, Netflix was charging $21.99 for its most popular subscription rental
14   plan. When Blockbuster Online entered the Online DVD Market in August of 2004 it was
15   charging $19.99 for a comparable plan; however, by November 2004 Blockbuster Online had
16   reduced its price to $17.49. Walmart DVD Rentals followed suit and reduced the price on its
17   comparable plan from $18.86 to $17.36. Faced with increasing competition, soon thereafter,
18   Netflix reduced its prices by nearly 20% to $17.99 per month.

19       40.    The price wars continued and Blockbuster Online further decreased its price to
20   $14.99. This was 20% below Netflix's already reduced price and more than 40% below the price
21   Netflix was charging just months earlier. Not to be under-priced, Walmart DVD Rentals reduced
22   its price to $12.97 on January 7, 2005. The CEOs of Walmart.com and Netflix met for dinner soon
23   afterward. As prices decreased, so did profits.

24       41.    At the same time competition was increasing in the Online DVD Rental Market,
25   competition was also increasing in the new DVD sales market. Defendants Wal-Mart Stores and
26   its wholly-owned subsidiary Walmart.com, which had established themselves as the leader in new
27   DVD sales, were facing increasing competition from in-store and online channels of distribution in
28   new DVD sales, including competition from Amazon.com.

CLASS ACTION COMPLAINT                        - 11 -

1   42.   Netflix had previously exited the new DVD sales market pursuant to a December

2   1998 agreement with Amazon.com and was not selling new DVDs online at the time of the Market

3   Division Agreement. Netflix did, however, pose a serious threat to Wal-Mart Stores and

4   Walmart.com if it entered the new DVD sales market. Netflix had a subscriber base of millions of

5   consumers who were known in the industry to be prolific DVD buyers, and the sales and profits of

6   Wal-Mart Stores and Walmart.com stood to suffer if Netflix began selling new DVDs to these

7   consumers. If however, Wal-Mart Stores and Walmart.com were able to persuade Netflix

8   subscribers to buy their DVDs from Wal-Mart, then Wal-Mart Stores and Walmart.com stood to

9   gain market share as well as additional sales and profits.

10   43.   Defendants were well-aware that competition in both the Online DVD Rental

11   Market and new DVD sales market was not good for them. On or about October 25, 2004, during

12   the midst of the price war, Netflix Chairman and CEO Reed Hastings stated: "The next year will be

13   painful for investors, but great for consumers." Hastings took affirmative action to ensure the

14   opposite would be true.

15   44.   Faced with increasing competition and decreasing profits, Hastings invited

16   Walmart.com's CEO John Fleming to dinner to discuss their companies' DVD sales and rental

17   businesses. Fleming, who reported directly to Walmart Stores' CEO Lee Scott, accepted the

18   invitation and the two met in January 2005. At the time of this meeting, Netflix and Walmart.com

19   were direct competitors in the midst of a price war – both competed in the online DVD rental

20   business and Netflix had the potential to compete directly with Walmart.com and Wal-Mart stores

21   in the DVD sales business.

22   45.   This meeting marked the beginning of Defendants' conspiracy to reduce

23   competition in both markets. Defendants' contract, combination and conspiracy was ultimately

24   reflected in their Market Division Agreement.

25   46.   On May 5, 2005, in Netflix's First Quarter earnings call with financial analysts, held

26   after the January dinner, but only two weeks prior to the public announcement of the Market

27   Division Agreement, Hastings made plain the motive for Netflix to conspire with Wal-Mart Stores

28   and Walmart.com:

CLASS ACTION COMPLAINT                                      - 12 -

010096-11 283632 V1

1
2
3
4

> In terms of profitability over the coming years, the key issue is the number of major competitors. If there are only two major players, Blockbuster and Netflix, the profitability may be substantial like other two-firm entertainment markets. If, on the other hand, Amazon, Wal-Mart, Blockbuster and Netflix are all major competitors in online rental, then the profits would likely be small.

5

Hastings went on to "predict" on that conference call:

6

> [T]he likely case is [that] online rental becomes a two-firm market over the coming years.

7
8
9
10
11

47.     On May 19, 2005, shortly after Fleming had been promoted to Chief Marketing Officer of Wal-Mart Stores, Defendants issued a joint press release that revealed the existence of the Market Division Agreement, by which they unlawfully divided and allocated the markets for DVD sales and rentals, and did, in fact, create the two-firm market that Hastings "predicted".

12
13
14

48.     Under Defendants' Market Division Agreement, Wal-Mart Stores and Walmart.com agreed to exit the Online DVD Rental Market in order to stop competing with Netflix and in return, Netflix agreed to not enter the new DVD sales market but instead promote the DVD sales of Wal-Mart Stores and Walmart.com.

15
16
17
18
19
20
21
22
23
24
25
26

49.     Both Wal-Mart Stores and Walmart.com are directly implicated in the illegal Market Division Agreement because at the time of the announcement of the Market Division Agreement, Fleming was acting not only in his capacity as an executive responsible for overseeing Walmart.com, but also as the Chief Marketing Officer of Wal-Mart Stores. Furthermore, in a letter submitted to the court in a prior antitrust case brought against Netflix by other plaintiffs for other alleged violations of law, an assistant general counsel for Wal-Mart Stores, referring specifically to Wal-Mart Stores, wrote of "Wal-Mart's decision to discontinue renting DVDs." And it was Wal-Mart Stores, not Walmart.com that issued the press release announcing the Market Division Agreement. In the press release, Wal-Mart Stores stated that Walmart.com's DVD sales are in fact Wal-Mart Stores' "online movie sales business," and that, more generally, Wal-Mart Stores' "[o]nline merchandise sales are available at www.walmart.com."

27
28

50.     Defendants' agreement did not go unnoticed. Several newspapers and other publications reported on the agreement. Titles of these articles sum up the public's reaction:

CLASS ACTION COMPLAINT                                    - 13 -

"Wal-Mart and Netflix: An Alliance;" "Wal-Mart and Netflix Scratch Each Other's Backs;" "Truce in DVD-Rental Wars;" "Wal-Mart Teams with Netflix;" and "Wal-Mart Loves Netflix: And Vice-Versa."

51.     Defendants subsequently followed through on their agreement. Beginning on May 19, 2005, Walmart.com exited the online rental business and encouraged its subscribers to transfer to Netflix. Walmart.com prominently placed a link to the Netflix website on its website encouraging Walmart.com subscribers to transfer their subscriptions to Netflix. Defendants even offered Walmart.com subscribers the opportunity to lock in their current lower Walmart.com subscription rates for up to one year if they transferred their subscriptions to Netflix. Netflix in return, encouraged its subscribers to buy their DVDs from Wal-Mart Stores and Walmart.com both online and in mailers sent to its subscribers.

52.     Since the date of their joint announcement on May 19, 2005 (apart from the 30 days that Walmart.com used to wind down its existing online rental business), neither Walmart.com nor Wal-Mart Stores has participated in the Online DVD Rental Market, nor has Netflix entered the new DVD sales market.

53.     Defendant's Market Division Agreement eliminated Walmart.com from the Online DVD Rental Market thereby eliminating Walmart.com's downward pricing pressure and creating a two-competitor market. Absent the Market Division Agreement, Netflix would have had to lower its prices no later than May 19, 2005. However, with competition reduced, both Blockbuster Online and Netflix quickly increased their prices.

54.     In July 2005, Blockbuster Online raised its subscription price from $14.99 to $17.99 per month, matching Netflix's price. And in Netflix's next earnings call on August 8, 2005, Hastings boasted:

> Last quarter we said online rental was shaping up to be a two-player market, and that is indeed what is happening.

55.     Defendants would not have entered into their Market Division Agreement absent an illegal, anticompetitive agreement not to compete. The agreement was not in the independent self-interest of Wal-Mart Stores, Walmart.com or Netflix. For instance, absent an agreement from

CLASS ACTION COMPLAINT                          - 14 -

Netflix to avoid competing with Wal-Mart on new DVD sales, neither Wal-Mart Stores nor Walmart.com would have wanted Walmart.com to withdraw from the Online DVD Rental Market, encourage its subscribers to be transferred to Netflix, or promote Netflix's rental business. Likewise, absent an agreement from Wal-Mart Stores and Walmart.com to exit the Online DVD Rental Market, Netflix would have no incentive to foreclose its opportunities to enter the new DVD sales market as Netflix's millions of subscribers purchased on average twenty-five (25) DVDs per year each, a substantial market opportunity.

## VIII. ANTITRUST INJURY TO PLAINTIFF AND THE CLASS

56. Defendants' illegal, anticompetitive Market Division Agreement has had the following effects, among others, it:

a. eliminated one of only three significant competitors in the Online DVD Rental Market;

b. eliminated competition between Defendants;

c. enabled Netflix to acquire market and monopoly power in the Online DVD Rental Market; and

d. enabled Netflix to implement monopolistic and supra-competitive pricing in the Online DVD Rental Market.

57. During the Class Period, Plaintiff and the Class paid supracompetitive prices for monthly subscription fees to Netflix. By reason of the alleged violations of the antitrust laws, Plaintiff and the Class have been injured, having paid higher prices for their Netflix monthly subscriptions than they would have paid in the absence of the illegal contract, combination or conspiracy. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

58. The specific amounts of damages have not yet been determined because such ·determination will require discovery.

CLASS ACTION COMPLAINT                                            - 15 -

010096-11 283632 V1

## IX.  CAUSES OF ACTION

### COUNT I

#### VIOLATION OF SECTION 1 OF THE SHERMAN ACT
#### Illegal Market Allocation Among All Defendants

59.  Plaintiff and members of the Class incorporate by reference the allegations above and re-allege each as though fully set forth herein.

60.  Defendants have entered into a per se illegal agreement to allocate markets to reduce and/or eliminate competition, in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

61.  Prior to and at the time of the agreement, Netflix and Walmart.com were actual competitors in the Online DVD Rental Market.  In addition, Netflix, Wal-Mart Stores and Walmart.com were potential competitors in new DVD sales market.  Wal-Mart Stores and Walmart.com were actual participants in the new DVD sales market and Netflix was a potential participant with the means and economic incentive to sell new DVDs – in the absence of the Market Division Agreement.

62.  Defendants entered into and engaged in a contract, combination or conspiracy beginning at least as early as May 19, 2005, designed to achieve the unlawful objective of dividing the markets for online DVD rentals and new DVD sales.  The Market Division Agreement allocated the Online DVD Rental Market to Netflix, with Wal-Mart Stores and Walmart.com agreeing not to compete in the Online DVD Rental Market.  The agreement also allocated new DVD sales to Wal-Mart Stores and Walmart.com, with Netflix agreeing to refrain from selling new DVDs and therefore agreeing not to compete with Wal-Mart Stores or Walmart.com in the new DVD sales market.  In addition to explicitly or de facto agreeing not to sell new DVDs, Netflix also obtained the Market Division Agreement by providing potentially valuable promotion to Wal-Mart Stores and Walmart.com.  In so doing, Netflix provided significant consideration to Wal-Mart Stores and Walmart.com for their agreement that Walmart.com would withdraw from, and both Walmart.com and Wal-Mart Stores would not compete in, the Online DVD Rental Market.

CLASS ACTION COMPLAINT                                    - 16 -

010096-11 283632 V1

63. The Market Division Agreement has created significant anticompetitive effects and no pro-competitive benefits. It eliminated competition in the Online DVD Rental Market, raising prices paid by consumers. To the extent that there are any pro-competitive benefits at all resulting from the agreement, they would not outweigh the agreement's anticompetitive effects. In any event, to the extent that there were any pro-competitive benefits, they could have been achieved by less restrictive means.

64. As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have sustained damages in an amount presently not known, by paying supracompetitive prices for Netflix subscriptions that they would not have had to incur but for the unlawful conduct of Defendants as alleged herein.

## COUNT II

### VIOLATION OF SECTION 2 OF THE SHERMAN ACT
### Conspiracy to Monopolize the Online DVD Rental Market By All Defendants

65. Plaintiff and members of the Class incorporate by reference the allegations above and re-allege each as though fully set forth herein.

66. Defendants consciously entered into and engaged in a contract, combination or conspiracy beginning at least as early as May 19, 2005, to monopolize the Online DVD Rental Market.

67. Prior to and at the time of the agreement, Netflix and Walmart.com were actual competitors in the Online DVD Rental Market. Defendants conspired with the specific intent, knowledge and purpose that their anticompetitive agreement would result in Netflix willfully acquiring and maintaining a monopoly in the Online DVD Rental Market. Wal-Mart Stores and Walmart.com knew that the natural and probable consequence of the Market Division Agreement would be the monopolization of the Online DVD Rental Market by Netflix. To effectuate their contract, combination or conspiracy, Defendants did those things they combined or conspired to do including: entering into, complying with and implementing the Market Division Agreement, in violation of section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

CLASS ACTION COMPLAINT                          - 17 -

010096-11 283632 V1

68. As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have sustained damages in an amount presently not known by paying supracompetitive prices for Netflix subscriptions that they would not have had to incur but for the unlawful conduct of Defendants as alleged herein.

## COUNT III

### VIOLATION OF SECTION 2 OF THE SHERMAN ACT
### Netflix's Monopolization of the Online DVD Rental Market

69. Plaintiff and members of the Class incorporate by reference the allegations above and re-allege each as though fully set forth herein.

70. Netflix has monopoly power in the Online DVD Rental Market.

71. Netflix willfully acquired, maintained and/or extended its monopoly in the Online DVD Rental Market by its acts and practices described herein, including by executing, implementing and otherwise complying with the Market Division Agreement in violation of section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

72. As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have sustained damages in an amount presently not known by paying supracompetitive prices for Netflix subscriptions that they would not have had to incur but for the unlawful conduct of Defendants as alleged herein.

## COUNT IV

### VIOLATION OF SECTION 2 OF THE SHERMAN ACT
### Netflix's Attempt to Monopolize the Online DVD Rental Market

73. Plaintiff and members of the Class incorporate by reference the allegations above and re-allege each as though fully set forth herein.

74. If Netflix does not already have monopoly power, then Netflix has a dangerous probability of success in achieving monopoly power in the Online DVD Rental Market.

75. With the specific intent to achieve a monopoly, Netflix by its acts and practices described herein, including by executing, implementing and otherwise complying with the Market Division Agreement, has attempted to monopolize the Online DVD Rental Market, in violation of section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

CLASS ACTION COMPLAINT                                    - 18 -

010096-11 283632 V1

76.     As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have

sustained damages in an amount presently not known by paying supracompetitive prices for Netflix

subscriptions that they would not have had to incur but for the unlawful conduct of Defendants as

alleged herein.

## X.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that:

a.      The Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed class representative, and that Plaintiff's counsel be appointed as counsel for the Class;

b.      Defendants be adjudged to violate sections 1 and 2 of the Sherman Antitrust Act of 1890, 15 U.S.C. §§ 1-2;

c.      The Court declare the Market Division Agreement between Defendants announced May 19, 2005, to be unlawful and null and void;

d.      Plaintiff and the Class recover compensatory damages as provided by law, determined to have been sustained by each of them, and that joint and several judgments in favor of Plaintiff and the Class respectively, be entered against Defendants in an amount to be trebled in accordance with antitrust laws, and each of them;

e.      Plaintiff and the Class recover their costs of this suit including reasonable attorneys' fees, expert fees and accountant's fees, as provided by law;

f.      Plaintiff and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law;

g.      Defendants, their affiliates, successors, transferees, assignees and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from, in any manner, continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect pursuant to section 16 of the Clayton Antitrust Act of 1914, 15 U.S.C. § 29; and

h.      Plaintiff and the Class be granted such additional relief as the nature of the case may require or as may seem just and proper to this Court.

## XI.     JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully

demands a trial by jury.

CLASS ACTION COMPLAINT                                    - 19 -

010096-11 283632 V1

1    DATED: January 28, 2009.

2                                          HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                                          By _____
                                                      JEFF D. FRIEDMAN
5
                                           715 Hearst Avenue, Suite 202
6                                          Berkeley, California 94710
                                           Telephone: (510) 725-3000
7                                          Facsimile: (510) 725-3001
                                           jefff@hbsslaw.com
8
                                           Steve W. Berman
9                                          Anthony D. Shapiro
                                           HAGENS BERMAN SOBOL SHAPIRO LLP
10                                         1301 Fifth Avenue, Suite 2900
                                           Seattle, WA 98101
11                                         Telephone: (206) 623-7292
                                           Facsimile: (206) 623-0594
12                                         steve@hbsslaw.com
                                           tony@hbsslaw.com
13
                                           Anthony J. Bolognese
14                                         Joshua H. Grabar
                                           Bolognese & Associates, LLC
15                                         Two Penn Center
                                           1500 JFK Boulevard, Suite 320
16                                         Philadelphia, PA 19102
                                           Telephone: (215) 814-6750
17                                         Facsimile: (215) 814-6764
                                           abolognese@bolognese-law.com
18                                         jgrabar@bolognese-law.com

19                                         Attorneys for Plaintiff
                                           MICHAEL WEINER
20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                - 20 -